**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID CHARLES SMEDLEY,

Plaintiff,

v.

ST. CLAIR COUNTY, *et al.*,

Defendants.

_________________________________ /

Case No. 2:26-cv-13345
Honorable Brandy R. McMillion
United States District Judge

**OPINION AND ORDER OF SUMMARY DISMISSAL**

Plaintiff David Charles Smedley ("Plaintiff") brings this *pro se* civil rights action, pursuant to 42 U.S.C. §§ 1983 and 1985, against Defendants St. Clair County, Chief Judge Peter E. Deegan (and/or the Estate of Chief Judge Peter E. Deegan), Kelly Miller, Brenda Stommel (and/or the Estate of Brenda Stommel), the Estate of Detective Elaine Butts, Port Huron Officer FNU Harrington, St. Clair Community College Officer Christopher Smith, Social Security Official FNU Wiggins, St. Clair County Public Guardian's Office, and Does 1-10 (collectively, "Defendants") related to more than four decades of alleged mistreatment by St. Clair County and related parties. *See generally* ECF No. 1. Plaintiff has also filed an Application to Proceed in District Court Without the Prepayment of Fees or Costs. ECF No. 2. For the reasons below, the Court **GRANTS** Plaintiff's request to proceed *in forma*

*pauperis*, but Plaintiff's federal claims are **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.**

Plaintiff's Complaint presents a myriad of factual allegations against varying parties, including Defendants, across several decades. As best the Court can discern, the allegations began with a 1983 St. Clair County Circuit Court Order (Case No. 83-813283-DP) that Plaintiff alleges established his familial parentage as "Semedley", but that the county and school officials refused to acknowledge. *See* ECF No. 1, PageID.2, 4-5. Plaintiff asserts that instead of "Smedley", officials forced the name "Brockitt" onto him, despite not doing the same for his siblings, because of animus based on his perceived sexual orientation and disability, and in an effort to deprive him of his American Indian indigenous heritage. *Id.* at PageID.5.

The Complaint also contains allegations relating to a juvenile case in which Plaintiff was coerced into pleading to an unarmed robbery conviction. *Id.* at PageID.6. Plaintiff alleges that he was interrogated without parental consent or the assistance of counsel, and he ultimately received a sentence under the Holmes Youthful Trainee Act (HYTA). *Id.* Despite being a minor, he was held in an adult jail, sexually assaulted, placed in protective custody, beaten, and dragged by guards. *Id.* at PageID.6-7. The Complaint further alleges that after nine months of being incarcerated, he was transitioned to a bootcamp, but purposefully disqualified from the placement based on outdated medical records, resulting in a probation violation

for not completing the program. *Id.* at PageID.8. As a result of the violation, he was sentenced to an additional 1.5 to 15 years and ultimately ended up serving 8 of those years before having his violation vacated. *Id.* Despite the vacatur, Plaintiff alleges that the judge explicitly ordered that his sentence remain in full force and effect. *Id.* During 2002-2004, he was placed on parole, and he alleges that his parole officer fabricated testimony before a grand jury in an apparent attempt to have him arrested. *Id.* at PageID.9.

After all of this (timing is unknown as the Complaint does not include any dates), Plaintiff alleges that he was prosecuted for criminal sexual conduct but was convicted of the lesser charge, accosting by encouragement. *Id.* at PageID.10. Plaintiff states his sentence was unlawfully enhanced by using his juvenile HYTA plea. *Id.* As a result of this conviction, Plaintiff was required to register on the sex offender registry. The Complaint states that his registry term was set at "15 years or 10 years following release (whichever was longest)[,]" but the county and state officials retroactively extended it indefinitely, despite both original terms expiring. *Id.* at PageID.10-11.

The Complaint then goes on to allege "a coordinated campaign of retaliation" by St. Clair County officials, local administrative offices, law enforcement, and health care providers "to constructively deny Plaintiff access to public services and basic survival needs." *Id.* at PageID.11. Plaintiff alleges that those events include denial of federal Social Security benefits, embezzlement of Plaintiff's funds by a

court-appointed guardian, physical injury and trauma by a dental provider, improper eviction proceedings, appointment of a guardian and mental health commitments to hospitals, an unlawful arrest for SORA violations, and deprivation of parental rights. *Id.* at PageID.11-17.

As a result, Plaintiff filed this suit alleging violations of the Ex Post Facto Clause (Count I), Double Jeopardy (Count II), Equal Protection and Due Process violations (Count III), Monell liability (Count IV), a §1985 Civil Rights Conspiracy (Count V), Deprivation of Familial Association (Count VI), and Unreasonable Seizure and False Imprisonment (Count VII). *See* ECF No. 1, PageID.17-20.[1] He seeks declaratory relief (that SORA is unconstitutional and his 1983 parentage order is valid); injunctive relief (removal from the sex offender registry and an order for officials to stop leaking records); and compensatory and punitive damages. *Id.* at PageID.20-21.

**II.**

Plaintiff filed an Application to Proceed in District Court Without the Prepayment of Fees and Costs (*in forma pauperis*), which, based on his financial status, the Court **GRANTS**. *See* ECF No. 2. Pursuant to 28 U.S.C. § 1915, the Court is required to dismiss an *in forma pauperis* complaint if it determines that the

[1] After Plaintiff filed the original complaint, he filed "Plaintiff's Rule 15(d) Supplemental Pleading" which seeks to add claims for First Amendment Retaliation, and duplicates claims for Fourteenth Amendment Due Process Violations and Monell liability. *See* ECF No. 5.

action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *Brooks v. Holstege*, No. 16-12501, 2016 WL 3667961, at *1 (E.D. Mich. July 11, 2016). A complaint is frivolous if it lacks an arguable basis in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may dismiss a claim *sua sponte* under 28 U.S.C. § 1915(e)(2)(B) if it is based on a meritless legal theory. *Neitzke*, 490 U.S. at 327.

Given that Plaintiff is proceeding *pro se*, the Court must construe his pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, *pro se* pleadings remain subject to summary dismissal. A complaint doesn't need detailed factual allegations, but it must include enough facts to suggest a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, complaints must contain enough factual matter, taken as true, to suggest that the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the facts allow a court to reasonably infer that the defendant is responsible for the alleged misconduct. *Iqbal*, 556 U.S. at 678.

To establish a federal civil rights claim, a plaintiff must show that they were deprived of a right, privilege, or immunity guaranteed by the federal Constitution or laws by someone acting under the color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). The plaintiff must establish the liability of each individual

defendant by that person's own conduct. "Because vicarious liability is inapplicable [in] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

To establish a § 1985 claim, Plaintiff must sufficiently allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville*, 360 F.Supp.3d 714, 725 (M.D. Tenn. 2019), *aff'd sub nom. Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee by & through Traffic & Parking Comm'n*, 805 F. App'x 379 (6th Cir. 2020). Beyond that, the Plaintiff must also allege that the conspiracy was motivated by racial or other class-based discriminatory animus. *Id.*; *see also Moniz v. Cox*, 512 Fed. Appx. 495, 499-500 (6th Cir. 2013) (collecting cases). And to sustain a claim, Plaintiff must prove both membership in a protected class and discrimination on account of it. *Deja Vu of Nashville*, 360 F.Supp.3d at 725.

**III.**

Plaintiff's Complaint is subject to dismissal for several different reasons. First, as a matter of law, it is untimely. Federal civil rights claims (whether under

§1983 or §1985) are subject to limitations periods. While the statutes themselves do not contain a statute of limitations, federal courts borrow the forum state's personal injury limitations period. *See Phifer v. City of Grand Rapids, Michigan*, 657 F. Supp. 2d 867, 873 (W.D. Mich. 2009) (three-year statute of limitations for §§ 1981, 1983 and 1985 claims). Nearly every event outlined in the Complaint is decades old. While some actions do not have dates associated with them, many are referenced as events from Plaintiff's juvenile years. The Complaint was filed on September 8, 2026, which means that any alleged constitutional violations that predate September 8, 2023 are barred under the statute of limitations. To the extent that Plaintiff relies on the Continuing Violation Doctrine to toll any limitations period, *see* ECF No. 1, PageID.10, that doctrine is inapplicable. The Continuing Violation Doctrine is applied narrowly in the Sixth Circuit and does not reach discrete acts or the continuing effects of past acts. *See Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). For a continuing violation to exist,

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern.... Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[ ] must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Id*. Plaintiff's theory that utilizing his childhood constitutional violations to justify adult sentence enhancements "tethered the two eras together" to create a "continuous, legally unbroken chain of state-sponsored injury" does not qualify. *See*

ECF No. 1, PageID.10. Consequently, any claims predating September 8, 2023 are time-barred and subject to dismissal.

Even if Plaintiff's claims were timely (and arguably some events may have occurred more recently), there are other grounds for dismissal of this action.[2] Plaintiff makes several claims that would require this Court to determine that Plaintiff's prior convictions, sentences, or revocations were unlawful. *See* ECF No. 1, PageID.10 (arguing the enhanced adult sentence shouldn't have been based on habitual offender enhancement from the HYTA conviction requires the Court to determine the sentence is unlawful); PageID.19 (deprivation of familial association requires the juvenile incarceration to be unlawful); PageID.17-18 (double jeopardy claim on probation revocation attacks the sentence itself); PageID.18 (challenges to the "homophobic criminal prosecutions" challenge prior convictions). However, the *Heck* doctrine prevents the Court from doing just that. *See Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994) (holding that a civil rights claim is not cognizable if a ruling on the claim would necessarily render confinement invalid, unless and until the reason for confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or has been called into question

[2] The Court notes that Plaintiff could potentially amend his Complaint to add dates to the events in question; but such amendment would be futile because the claims are otherwise subject to dismissal as discussed herein. *See* Fed. R. Civ. P. 15; *see also Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (Futility exists if a proposed amendment could not withstand a Rule 12(b)(6) motion to dismiss).

by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254). And *Heck* and other Supreme Court cases, when "taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis omitted). The underlying basis for the holding in *Heck* is that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. Consequently, any challenge to Plaintiff's HYTA plea, his probation revocation, his sentence or the habitual enhancement, his parole revocation, or the accosting conviction that directly challenges their validity is barred by the *Heck* doctrine and must be dismissed.[3]

Additionally, Defendant Chief Judge Peter E. Geegan (or his estate) is subject to judicial immunity. Generally speaking, judges "have broad immunity from being sued." *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019) (citing *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam)). Federal law has long afforded judges absolute immunity from suits for money damages arising out of actions taken in a judge's official judicial capacity." *Hughes v. Duncan*, 93 F.4th 374, 378 (6th Cir. 2024).

[3] This would include claims against Detective Elaine Butts, Officer Harrington, and Officer Smith.

Absolute judicial immunity is overcome only in two situations: (i) nonjudicial actions (i.e., actions not taken in the judge's judicial capacity) and (ii) actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Mireles,* 502 U.S. at 11-12. And based on the facts presented, neither exception is applicable in this case. Consequently, claims against Judge Geegan are dismissed.

Further, Defendants Kerry Miller and Brenda Stommel (or her estate) are also immune from suit. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *see also Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012) (quoting *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir.1997)) ("One who acts as the judge's designee, and who carries out a function for which the judge is immune, is likewise protected."). Further, enforcing or executing court orders is intrinsically associated with the judicial process for the purpose of immunity from §1983 civil rights actions. *See Bush*, 38 F.3d at 847. Probation Officers performing their assigned duties are entitled to absolute, quasi-judicial immunity from liability in a civil rights action. *See Loggins v. Franklin Cnty., Ohio*, 218 F. App'x 466, 476-77 (6th Cir. 2007); *Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (citing cases). The same holds true for the St. Clair County Guardian's Office. That office is a county-level local government department operating by appointment of the Probate Court. *See* https://www.stclaircounty.org/Offices/22 (last accessed October

1, 2026). As officers of the court, it follows that actions taken in their quasi-judicial function would be subject to immunity. Therefore, the claims against Probation Officers Miller and Stommel, the St. Clair County Guardian Office, and Does 1-10 (St. Clair County Probation and Court Officials) would be subject to dismissal.

Similarly, claims against St. Clair County are also subject to dismissal. Under § 1983, a municipality can be held liable only if the plaintiff demonstrates that the injury suffered was a direct result of the municipality's official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*. (emphasis omitted); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Municipal liability is limited to actions for which the municipality is "actually responsible." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (Brennan, J., concurring) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)). To establish municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [the] particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *see also S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 563 (6th Cir. 2007) (stating that the entity "must be the moving force behind the deprivation, such that the entity's policy of custom played a part in the violation of federal law") (cleaned up). Here, Plaintiff's Complaint does not detail any policy or

custom and merely states that St. Clair County has a "de facto policy" and parrots, in a conclusory fashion, liability under the claim. *See* ECF No. 1, PageID.18-19. There are no allegations about any named policy, how it is connected to the county, or how injury was sustained as a result. Therefore, the *Monell* claim against St. Clair County is also subject to dismissal.

Moreover, Defendant FNU Wiggins, as a Social Security Administration official, is a federal employee, not a state employee; and therefore, he does not "act under color of state law." 42 U.S.C. § 1983. And it is well-settled that "[w]ithout a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). Absent any such waiver, which is not pleaded here, Defendant Wiggins should be dismissed from this suit.

Additionally, with respect to Plaintiff's §1985 civil conspiracy claims, that claim should also be dismissed. As pleaded, Plaintiff fails to state a claim upon which relief can be granted. Section 1985 claims require a class-based animus and a conspiracy to be pleaded with specifics. *Moniz*, 512 Fed. Appx. at 499-500. Neither is done here. Plaintiff merely states, "Defendants executed a coordinated conspiracy to enforce systemic identity erasure and inflict physical and financial ruin upon Plaintiff." ECF No. 1, PageID.19. Even construing Plaintiff's *pro se* complaint liberally, that is not enough to state a plausible claim under § 1985. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Finally, while Plaintiff's Ex Post Facto Clause claim relating to extension of his placement on the sex offender registry is the claim that had the most potential to withstand initial screening, it too is subject to dismissal. The placement of offenders on the Michigan Sex Offender Registry has long been the subject of litigation in both Michigan federal and state courts. *See People v. Smith*, 38 N.W.3d 736 (Mich. 2026); *Does v. Whitmer*, 751 F. Supp. 3d 761, 795 (E.D. Mich. 2024) (pending on appeal to the 6th Circuit), *People v. Kardasz*, No. 165008, 2025 WL 3691966, at *14 (Mich. Dec. 19, 2025); *People v. Betts*, 968 N.W.2d 497, 515 (2021), *Does #1-5 v. Snyder*, 834 F.3d 696, 705–06 (6th Cir. 2016). Most recently, in *People v. Smith*, the Michigan Supreme Court ruled that the 2021 version of the Sex Offender Registration Act (SORA) was an unconstitutional retroactive punishment for any registerable sex offense committed before July 1, 2011. 38 N.W.3d at 736. Therefore, the 2021 amendments could no longer be used to extend registration requirements of offenders whose registerable offense predated July 2011. While the Court is not entirely sure that applies to Plaintiff, as he does not plead the dates of his criminal offenses in the Complaint, he asks the Court for injunctive relief to remove him from the sex offender registry. ECF No. 1, PageID.20. As a result of the ruling in Smith, the Michigan State Police recently removed anyone who had a registerable offense that predated July 2011. *See* MSP Newsroom, September 11, 2026, https://www.michigan.gov/mspnewsroom/news-releases/2026/09/11/sor-compliance-official-statement (last accessed October 2, 2026). A search of the

Michigan Sex Offender Registry reveals that Plaintiff (under either the Smedley or Brockitt name) does not appear on the registry. *See* Michigan Sex Offender Registry, https://mspsor.com/Home/Search (last accessed October 1, 2026). As a result, this claim is now moot and subject to dismissal.

**IV.**

Based upon the foregoing analysis, the Court concludes that Plaintiff fails to state a claim upon which relief may be granted under §1983 or §1985. Accordingly, Plaintiff's Complaint (ECF No. 1) is summarily **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS SO ORDERED**.

Dated: October 2, 2026

s/Brandy R. McMillion
Hon. Brandy R. McMillion
United States District Judge